UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THAT XIONG,

          Petitioner,

    v.

MINGA WOFFORD,

          Respondent.

No.  1:25-cv-2004 CSK

ORDER

Petitioner That Xiong, a noncitizen, filed a First Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his re-detention.[1]

## I.    BACKGROUND

On January 21, 2026, the Court denied Petitioner's motion for a preliminary injunction after holding a hearing on January 13, 2026.  (ECF No. 20.)  The factual and procedural background previously presented in the Court's January 21, 2026 order are incorporated herein.  (See ECF No. 20.)  This section focuses on providing updates since the January 21, 2026 order.

On January 29, 2026, Petitioner filed a response to the Order to Show Cause why the preliminary injunction should not be converted to a final order denying habeas relief.  (ECF No. 23.)  Respondent did not file a response.  (See Docket.)

---

[1]  Petitioner is represented by counsel and paid the filing fee.  The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (ECF No. 9.)

1

On March 4, 2026, Petitioner moved to amend his habeas petition, which the Court granted on March 9, 2026.  (ECF Nos. 26, 27.)  Petitioner filed his First Amended Petition, and the Court set a merits briefing schedule.  (ECF Nos. 28, 29.)  On March 16, 2026, Respondent filed its motion to dismiss the First Amended Petition, and Petitioner filed his opposition.  (ECF Nos. 32, 34.)  Respondent also filed a motion to lift the December 26, 2025 stay enjoining Petitioner's transfer out of district (ECF No. 6) because Petitioner has received travel documents from Laos and is subject to a final order of removal. (ECF No. 31.)  The Court granted Respondent's motion to lift the stay (ECF No. 31) as follows: "The Court clarifies that the December 26, 2025 Order does not prohibit or restrict respondents from removing petitioner from the country.  The December 26, 2025 Order is limited to prohibiting respondents from transferring petitioner out of this judicial district to another judicial district."  3/19/2026 Order (ECF No. 35).

On March 19, 2026, Petitioner filed a second motion for a temporary restraining order where Petitioner was scheduled for removal to Laos on or about March 25, 2026.  (ECF No. 36.)  Respondent filed an opposition and Petitioner filed a reply.  (ECF Nos. 38, 39.)  The Court granted in part Petitioner's second motion for a temporary restraining order.  (ECF No. 42.)  Petitioner was provided with the opportunity to raise his fear-based claim of removal to Laos in an interview on February 12, 2026 (ECF Nos. 32-1, 32-2, 32-3).  Despite repeated requests for the government's reasonable fear determination, Petitioner was inexplicably not provided with the determination until March 9, 2026 (see ECF No. 32 at 2).  Petitioner was found not to have demonstrated a reasonable fear of removal to Laos (ECF No. 32-1).  The Court granted in part Petitioner's motion for a temporary restraining order to provide Petitioner with the opportunity to seek reopening of his immigration proceedings to challenge his third-country removal or seek stay of removal.  Respondent was enjoined from removing Petitioner to Laos until at least March 25, 2026 to provide Petitioner with 15 days after receiving the government's fear determination to seek reopening to challenge his third-country removal or to seek stay of removal.  Petitioner was ordered to file a status report regarding his status.

In Petitioner's March 25, 2026 status report, Petitioner reported that the parties agreed to a

temporary extension of time during which the government would refrain from removing Petitioner.  (ECF No. 43.)  Petitioner also reported that he was actively preparing a motion to reopen and a request for stay of removal within his immigration proceedings, which are separate from the habeas petition pending before this district court.  (Id.)

On March 27, 2026, the parties submitted a stipulation that Petitioner shall not be removed through and including April 2, 2026 to allow Petitioner additional time to seek relief in his immigration proceedings to file a motion to reopen and seek a stay of removal.  (ECF No. 45.)  As a result, on March 27, 2026, the Court continued the deadline for Respondent's optional reply on its motion to dismiss to April 6, 2026, and informed the parties that briefing would be closed after the reply.  The Court also ordered Petitioner, by 5:00 p.m. on April 3, 2026, to (1) file a status report regarding his status; and (2) show cause why the First Amended Petition should not be dismissed as moot where Petitioner has been provided with the reasonable fear determination sought and Petitioner has been provided due process through the opportunity to seek reopening and/or a stay of removal.  Petitioner filed his status report and response to the order to show cause.  (ECF No. 46.)  Respondent did not file a reply.  (See Docket.)  Briefing is now closed on the First Amended Petition.

II.    **LEGAL STANDARDS**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

3

## III.    DISCUSSION

In his First Amended Petition, Petitioner brings six claims:  (1) unlawful detention in violation of <u>Zadvydas v. Davis</u>, 533 U.S. 678 (2001) and the Constitution; (2) violation of the Fifth Amendment due process clause based on the failure to provide the opportunity to assert fear of persecution before removal; (3) failure to disclose reasonable fear determination in violation of due process; (4) failure to reopen immigration proceedings after Petitioner expressed a fear of removal to Laos in violation of due process; (5) unlawful removal to a country where Petitioner has no legal status in violation of due process; and (6) a violation of the Administrative Procedure Act ("APA").  (ECF No. 28 at 4-7.)  Respondent argues that Petitioner's detention is not indefinite, Petitioner's removal to Laos is lawful, and the court lacks jurisdiction because Petitioner's claims are based on the execution of Petitioner's removal order.  (<u>See</u> <u>generally</u> ECF No. 32.)  Before turning to the claims, the Court rejects Respondent's argument that Petitioner's claims are based on the execution of Petitioner's removal order.  (<u>See</u> ECF No. 32 at 5.)  The First Amended Petition challenges Petitioner's re-detention and the due process required in re-detaining and continuing to detain Petitioner.

### A.    Fear Claims (Claims Two, Three, and Six)

The Court concludes that the following three claims in the First Amended Petition are moot and are therefore denied.  In claim two, Petitioner asserts that due process was violated based on the government's failure to provide him with the opportunity to assert fear of persecution before removal.  (ECF No. 28 at 5.)  This claim is denied as moot because Petitioner was provided with the opportunity to assert his fear of persecution before removal and the government issued its determination on Petitioner's assertion of fear, which Petitioner does not dispute.  (ECF No. 32 at 2; ECF Nos. 32-1, 32-2, 32-3; <u>see</u> ECF No. 34.)  In claim three, Petitioner alleges that the failure to disclose the reasonable fear determination violated due process.  (ECF No. 28 at 5.)  This claim is denied as moot because the government disclosed its fear determination on March 9, 2026, which Petitioner does not dispute.  (ECF No. 32 at 2; ECF Nos. 32-1, 32-2, 32-3; <u>see</u> ECF No. 34.)  Finally, in claim six, Petitioner alleges an APA violation based on the government's refusal to disclose its reasonable fear determination.  (ECF No. 28 at

4

6-7.)  As described above, it is undisputed that the government disclosed its fear determination on March 9, 2026, and this claim is denied as moot.  (ECF No. 32 at 2; ECF Nos. 32-1, 32-2, 32-3; see ECF No. 34.)  In conclusion, the relief that the Court could order on claims two, three, and six has already been provided to Petitioner, and therefore, the claims are denied as moot.

The Court separately notes concerns regarding the record and Petitioner's claims.  Though Petitioner now claims to have a fear of removal to Laos and he has been provided with additional time to challenge third country removal by seeking to reopen or stay his underlying immigration proceedings, the merits of which are not for the district court to determine, the record before the court indicates that no such fear was expressed by Petitioner or Petitioner's counsel through mid-January 2026 during the first motion for a temporary restraining order, which was converted to a motion for a preliminary injunction.  On December 19, 2025, Petitioner was issued a Notice of Imminent Removal pursuant to 8 C.F.R. § 241.4(g)(4) and a Notice of Revocation of Release, was re-detained by ICE, and was promptly provided with an informal interview, as required by 8 C.F.R. § 241.13(i)(3).  (ECF No. 11-4 at 38, 45-46, 48-49; ECF No. 19; ECF No. 19-1.)  Petitioner was provided with the opportunity to respond to the reasons for the revocation, to show no significant likelihood of removal in the reasonably foreseeable future, and to provide a statement or claim regarding fear of deportation to Laos, but Petitioner did not assert such a fear.  See id.; 8 C.F.R. § 241.13(i)(3).  In his January 7, 2026 reply, Petitioner also did not indicate that he feared being removed to Laos or that he has initiated any process to claim such a fear.  (See ECF No. 12.)  In addition, on January 13, 2026, the government filed a status report that as of January 12, 2026, there was no record that Petitioner or Petitioner's counsel had expressed a fear of Petitioner's removal to Laos.  (ECF No. 17.)  Petitioner did not dispute the government's January 13, 2026 status report.  (See Docket.)  It appears that at some point after January 12, 2026, Petitioner asserted a fear of removal to Laos and was interviewed on February 12, 2026 regarding his fear.  (See ECF No. 32-3.)

**B.      Reopening Immigration Proceedings (Claim Four)**

In claim four, Petitioner claims the failure to reopen immigration proceedings after Petitioner expressed a fear of removal to Laos violates due process.  (ECF No. 28 at 6.)  Petitioner

fails, however, to establish that due process requires the government to reopen immigration proceedings after it is determined that petitioner does not have a reasonable fear.  (See ECF No. 34.)  Petitioner also argues that the government violated the procedures under 8 CFR § 208.31.  (ECF No. 34 at 4.)  This argument fails because 8 C.F.R. § 208.31 does not apply to Petitioner, who was a lawful permanent resident and is subject to a final removal order pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction of an aggravated felony.  (See ECF No. 11-4 at 16-19.)  8 CFR § 208.31 applies to two categories of noncitizens: noncitizens subject to (1) administrative removal under INA § 238(b), 8 U.S.C. § 1228(b), which applies to non-permanent residents who have committed certain aggravated felonies; and (2) reinstated removal under INA § 241(a)(5), 8 U.S.C. § 1231(a)(5), which applies to noncitizens who illegally re-enter the United States after being removed or departing voluntarily under a removal order.

While it is unclear why Petitioner waited over two weeks to seek to reopen his immigration proceedings after receiving the reasonable fear determination on March 9, 2026 and Petitioner provided no explanation for his delay (see 3/25/2026 Petr. Status Report (ECF No. 43)), Petitioner had the ability to seek reopening of his immigration proceedings and "has taken concrete steps to seek reopening and a stay of removal" as he reported in his April 3, 2026 status report (ECF No. 46).  The Court therefore denies claim four.

**C.      Remaining Due Process Claims (Claims One and Five)**

In claim one, Petitioner argues that removal is not reasonably foreseeable so his detention violates Zadvydas v. Davis, 533 U.S. 678 (2001) and the Constitution.  (ECF No. 28 at 4.)  In claim five, Petitioner contends that his removal to a country (Laos) where Petitioner has no legal status violates due process.  (ECF No. 28 at 6.)

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is

6

lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693. "The Due Process clause applies to noncitizens in this country in connection with removal proceedings, even if their presence is unlawful or temporary." Tinoco v. Noem, 2025 WL 3567862, at *5 (E.D. Cal. Dec. 14, 2025) (citing Zadvydas, 533 U.S. at 690).

The Court analyzes Petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."

7

Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

Petitioner's prior release under an Order of Supervision created a reasonable expectation that Petitioner would be entitled to retain his liberty if he followed the release conditions and if the requirements for revocation of his release under Order of Supervision were not established.  This Court therefore finds that Petitioner's prior release under an Order of Supervision gave rise to a constitutionally protected liberty interest.[2]

Next, the Court turns to what procedures are necessary to ensure that the deprivation of that protected liberty interest meets the demands of the Constitution.  The Ninth Circuit has "regularly applied Mathews [v. Eldridge, 424 U.S. 319 (1976)], to due process challenges to removal proceedings."  Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022); see also Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (applying Mathews factors in immigration detention context).  In applying the Mathews test to a procedural due process claim challenging immigration detention, the Ninth Circuit explained that "Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  Rodriguez Diaz, 53 F. 4th at 1206-07 (citations omitted).  Under Mathews, the Court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest.  Mathews, 424 U.S. at 335.

First, Petitioner has a clear interest in remaining free from detention.  "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects."  Zadvydas, 533 U.S. at 690 (citing Foucha, 504 U.S. at 80 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); Hernandez, 872 F.3d at 981 ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

---

[2]  The Court concludes that its analysis at the second step, which includes examining the procedures for asserting a fear of removal to a third country, would not differ if the Court determined at the first step that Petitioner has a protected liberty interest in not being removed to Laos.  The Court therefore declines to decide whether Petitioner has a protected liberty interest in not being removed to a country where he alleges he lacks legal status and may be detained.

The first Mathews factor weighs in Petitioner's favor.

Second, the court examines the risk of an erroneous deprivation. The regulations at issue are relevant to the due process analysis where courts have found that due process requires that the procedures for revoking the release of a noncitizen subject to a final removal order and under an order of supervision be provided to the noncitizen. Pursuant to 8 C.F.R. § 241.13(i)(2), the government may revoke the release of a noncitizen subject to a final order of removal who has been released under an order of supervision if the government determines that "there is a significant likelihood that the alien may be removed in the reasonably foreseeable future" due to changed circumstances. This case is different from cases like Vuong v. Becerra, 2025 WL 3707172, at *3-4 (E.D. Cal. Dec. 22, 2025), where district courts have found that the government failed to follow its own regulations to revoke release under 8 C.F.R. § 241.13, or cases like Vu v. Noem, 2025 WL 3114341, at *5-7 (E.D. Cal. Nov. 6, 2025), where the government did not meet their burden to show a significant likelihood that the noncitizen may be removed in the reasonably foreseeable future.

Here, the government followed its regulations and there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future where a Laotian Travel Document was issued for Petitioner. Petitioner was subject to a final removal order. (ECF No. 11-4 at 27-28.) After the government received a Laotian Travel Document for Petitioner on December 8, 2025, DHS issued a warrant for Petitioner's removal and re-detained Petitioner on December 19, 2025 after issuing a Notice of Imminent Removal, which informed Petitioner that U.S. Immigration and Customs Enforcement ("ICE") "is in possession of a travel document to affect your removal and expects this to occur in January 2026" (ECF No. 11-4 at 45-46), and issued a Notice of Revocation of Release, which explained that Petitioner's supervised release was revoked based on changed circumstances in his case (id. at 48-49). ICE promptly held an informal interview with Petitioner on December 19, 2025, as required by 8 C.F.R. § 241.13(i)(3). (ECF Nos. 19 & 19-1.) Petitioner was provided with the opportunity to respond to the reasons for the revocation, to show no significant likelihood of removal in the reasonably foreseeable future, and to provide a statement or claim regarding fear of deportation to Laos. See

8 C.F.R. § 241.13(i)(3).  Petitioner's re-detention was lawful.

As already described above, Petitioner does not dispute that as of January 12, 2026, neither Petitioner nor his counsel expressed a fear of Petitioner's removal to Laos.  (See ECF No. 17.)  Once Petitioner asserted his fear of removal to Laos, he was provided with a fear interview on February 12, 2026.  Though Petitioner was inexplicably not provided with the government's fear determination until March 9, 2026, Petitioner was ultimately provided with the fear determination and additional documentation.  Petitioner also has been provided with additional time to challenge third country removal and seek relief in immigration proceedings.  In addition, though Petitioner argues that the government violated its own regulations under 8 CFR § 208.31, this argument fails as described above because 8 C.F.R. § 208.31 does not apply to Petitioner.  The second Matthews factor weighs heavily against Petitioner.

As to the third Mathews factor, as this Court has done in other immigration habeas cases, this Court recognizes that the government has an interest in enforcing immigration laws and in public safety.  Unlike other immigration habeas cases where the government failed to follow its own regulations, the government followed its regulations here.  The government's interest in public safety includes its interest in removing noncitizens like Petitioner who are subject to final orders of removal for having committed aggravated felonies.  The Court finds that the third Matthews factor also weighs against Petitioner.

The Court concludes that Petitioner has received the process that he was due, and arguably, more.  As described above, the government followed its own regulations in revoking Petitioner's release.  Despite Petitioner and his counsel not asserting a fear of removal to Laos for almost a month or longer, after Petitioner asserted his fear of removal to Laos, he was not removed and he was provided with a fear interview.  Though Petitioner was not provided with the government's fear determination until three weeks after his interview, he was not removed during this time and he was provided with the fear determination.  He was then provided with the opportunity to challenge his third country removal by seeking separate relief in immigration proceedings.  The Court enjoined Respondent from removing Petitioner to Laos to until at least March 25, 2026, to provide Petitioner with at least 15 days after he received notification on

10

March 9, 2026 of the government's fear determination to seek reopening to challenge his third-country removal or to seek stay of removal. (ECF No. 42.) Despite Petitioner providing no explanation for his own delay in seeking to reopen his immigration proceedings, the government agreed to provide Petitioner with even more time than what this Court ordered, agreeing to provide eight additional days through April 2, 2026. (ECF No. 44.)

Though Petitioner argues that the Court should further enjoin his removal pending completion of his immigration proceedings, which are separate and distinct from this habeas action, Petitioner fails to provide legal authority for this relief.[3] (See ECF No. 46.) This habeas action challenges Petitioner's re-detention, which the Court finds was lawful. The Court also concludes that Petitioner was provided with due process in his re-detention. The Court declines to reach the parties' remaining arguments as unnecessary. In conclusion, the Court denies the First Amended Petition and denies Respondent's motion to dismiss (ECF No. 32) as moot.

## IV.    FAILURE TO COMPLY WITH COURT ORDER AND HALLUCINATED LEGAL CITATIONS

The Court notes with serious concern that Petitioner again filed a brief with the court that contains incorrect citation to legal authority, which again appear to have been the result of the improper or irresponsible use of generative artificial intelligence (also referred to as "GenAI"). (See ECF No. 34 at 2-3.) For example, Petitioner cites to "G.A.A. v. Chestnut, No. 1:25-cv-01102-EPG, 2025 WL 3030589 (E.D. Cal. Nov. 21, 2025)." (ECF No. 34 at 2; see id. at 3.) This citation bears the marking of a hallucinated citation where the Westlaw citation is for a completely different case, from a different district, issued on a different date: Esmail v. Noem, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589 (C.D. Cal. Sept. 26, 2025). G.A.A. v.

---

[3] The Court notes that in petitioner's opposition, petitioner submits legal authority for his argument that the existence of a travel document does not cure violations and that removal is not reasonably foreseeable. (See, e.g., ECF No. 34 at 2-3 (citing "G.A.A. v. Chestnut, No. 1:25-cv-01102-EPG, 2025 WL 3030589 (E.D. Cal. Nov. 21, 2025)" and "Ibarra-Perez v. USA (9TH Cir. Aug, 27, 2025)") (emphasis in original).) Petitioner's reliance on cases where the petitioner was granted withholding of removal is misplaced. See Ibarra-Perez v. United States, 154 F.4th 989, 993 (9th Cir. 2025). Petitioner was not granted withholding of removal, and withholding of removal implicates different legal issues than what is presented here. The Court separately addresses issues regarding Petitioner's legal citations in Section IV below.

Chestnut is, however, a real case from our district court with Case No. 1:25-cv-01102-EPG.

The Court has serious concerns because, earlier in this action, Petitioner submitted a brief with hallucinated citations from what appeared to be the improper or irresponsible use of generative artificial intelligence.  See 1/9/2026 Order (ECF No. 13); 1/13/2026 Minutes (ECF No. 18); 1/22/2026 Order at 5-6 n.5 (ECF No. 20).  On January 9, 2026, in advance of the January 13, 2026 hearing on Petitioner's first motion for a temporary restraining order, the Court provided written notice to Petitioner's counsel regarding hallucinated citations and that counsel should "be prepared to address the legal authority cited in Petitioner's briefing. For example, Petitioner cites to the following cases in his reply on p.2 that the Court is not able to locate and appear to be hallucinated citations: Phan v. Barr, No. 1:19-cv-01451, 2019 WL 7758773 (E.D. Cal. Dec. 20, 2019); Flores v. Barr, No. 1:20-cv-00491, 2020 WL 1939565 (E.D. Cal. Apr. 22, 2020)."  (ECF No. 13.)  The Court also gave counsel notice that "a law student is listed on Petitioner's filings with Petitioner's counsel, but it is unclear whether all the requirements of Local Rule 181 for Certified Students have been satisfied as the required Certified Student designation is missing.  If the law student intends to appear at the hearing or continue to be listed on future filings, Petitioner's counsel must ensure that all the requirements of Local Rule 181 have been satisfied."  (ECF No. 13.)

On January 12, 2026, Petitioner's counsel filed a Notice acknowledging the erroneous citations and providing correct citations for two different cases.  (ECF No. 16 at 1-2.)  Counsel also noted that Petitioner's future filings would comply with Local Rule 181 regarding law students.  (Id. at 2.)

At the January 13, 2026 hearing, the Court addressed the hallucinated citations in Petitioner's reply brief.  The Court informed Petitioner's counsel that when hallucinated citations are submitted in a court filing, courts typically issue an Order to Show Cause ("OSC") regarding the hallucinated citations.  The Court decided not to issue an OSC because a law student had been listed on all of Petitioner's filings, including the reply brief with the hallucinated citations, and the Court determined that a more lenient approach was warranted given the potential involvement of a law student.  After discussing the danger and harmful effects from the misuse of generative

12

artificial intelligence, counsel's admission that he did not check the reply brief that he filed for accuracy, and counsel's assurance that such errors would not happen again, the Court ordered the following:

> The Court required petitioner's counsel to order the transcript for today's proceedings and provide this transcript to the law student on petitioner's filings and to any staff who assists petitioner's counsel and require [] the law student and any staff to read the transcript. Within two months of today's hearing, Petitioner's counsel is ordered to confirm in writing by email to the Courtroom Deputy that (1) the transcript from today's hearing was provided to the law student listed on Petitioner's filings and to <u>any</u> staff who assist Petitioner's counsel, and (2) the law student and staff read the hearing transcript.  The Government requested that petitioner's counsel review other petitions filed by petitioner's counsel for similar issues, and petitioner's counsel confirmed that he would do so and would bring those issues to the district court's attention.

(ECF No. 18.)  At the hearing, the Court also granted Petitioner's counsel's request for two months to comply with the Court's order, which was due by March 13, 2026.

As of April 8, 2026, Petitioner's counsel unfortunately has not complied with the Court's order.  The Courtroom Deputy has not been contacted in writing as ordered.  The docket also does not indicate that a written transcript was ever ordered for the hearing, and only an audio recording request was made.  (<u>See</u> ECF Nos. 24, 25.)

The Court again warns Petitioner's counsel that <u>all</u> of his filings to this district court must include accurate citation to actual legal authority.  Petitioner's counsel may not continue to use the excuse that he failed to check his briefs before they were filed with the court, or that he was not aware that his law student may be using generative artificial intelligence.  It is not this Court or any court's responsibility to hunt for and find the correct citations for legal authority, or attempt to figure out if there is an actual real case for a hallucinated citation submitted in a court filing by a party, let alone by counseled parties.

A separate Order to Show Cause will issue regarding Petitioner's counsel's failure to comply with the Court's January 13, 2026 order and Petitioner's opposition filed at ECF No. 34.

/ / /

/ / /

/ / /

13

**V.    CONCLUSION AND ORDERS**

Accordingly, IT IS HEREBY ORDERED that:

1.  The First Amended Petition (ECF No. 28) is denied.

2.  Respondent's motion to dismiss (ECF No. 32) is denied as moot.


Dated:  April 9, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE


csk/Xion2004.imm.merits

14